UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 4:25-CR-538-MAL |
| JIMMIE MOOREHEAD, | ) | |
| Defendant. | ) | |

# GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant **Jimmie Moorehead** (the "defendant"), represented by defense counsel **Dramon Foster**, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1 of the charge, the Government agrees to move for the dismissal as to the defendant of Counts 2 through 9 at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to

the defendant's conduct described in the Indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count 1, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offenses.

**3. <u>ELEMENTS</u>:**

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 371, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, two or more persons reached an agreement or came to an understanding to make false statements related to health care matters, in violation of 18 U.S.C. § 1035;

*Two*, the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect;

*Three*, at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding; and

*Four*, while the agreement or understanding was in effect, a person or persons who had joined in the agreement or understanding knowingly did one or more overt acts for the purpose of carrying out or carrying forward the agreement or understanding.

**4. <u>FACTS</u>:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

**Background**

a. The defendant admits that, at all relevant times, D.S. owned and operated Bella Consumer Directed Services, LLC (Bella), a consumer-directed services vendor located in St. Louis County, Missouri, in the Eastern District of Missouri. Consumer-directed services (CDS) are personal care services—such as grooming, housekeeping, transportation, medication assistance, and meal preparation—that are provided to a consumer with a disability or chronic health issue by a personal care attendant of the consumer's choosing.

b. The defendant admits that, at all relevant times, he resided in St. Louis, Missouri, and purported to be a CDS consumer in need of personal care services. The defendant admits that, in or around November 2019, he began using Bella as his CDS vendor.

c. The defendant admits that, at all relevant times, co-defendant Johnika Davis (Davis) resided in St. Louis, Missouri, and purported to be a CDS consumer in need of personal care services. In or around October 2019, Davis began using Bella as her CDS vendor.

d. The defendant admits that, at all relevant times, he and Davis were domestic partners who cohabitated in St. Louis, Missouri.

e. Missouri Medicaid is a health care benefit program within the meaning of 18 U.S.C. § 24(b) that affects interstate commerce and provides low-income citizens of Missouri with medical benefits, items, and services.

f. At all relevant times, Bella was enrolled as a provider with the Missouri Medicaid program, which reimbursed Bella for claims for services that D.S., as its owner, submitted and caused to be submitted.

g. The defendant admits that, at all relevant times, he and Davis were Medicaid beneficiaries who were enrolled to receive personal care services funded by Medicaid. The defendant admits that, as beneficiaries enrolled to receive personal care services, he and Davis underwent annual assessments by Missouri's Department of Health and Senior Services (MDHSS) to determine whether they, in fact, had a medical need and otherwise qualified for such services, and, if so, the type of services for which they qualified.

h. Claims for payment for services, including CDS services, are not eligible for reimbursement by Missouri Medicaid if they are for medically unnecessary services or if they falsely represent that a service occurred when, in fact, a service did not occur.

**Conspiracy**

i. The defendant admits that, from in or about October 2019 and continuing to in or about July 2024, he, Davis, and D.S. conspired to make false and fraudulent representations to Medicaid regarding services they falsely claimed the defendant and Davis were receiving from personal care attendants through Bella in order to make money and profit.

j. The defendant admits that, beginning in or about October 2019, Davis enrolled as a CDS consumer and client of Bella to receive personal care services from a purported personal care attendant of Davis's choosing.

k. The defendant admits that, beginning in or about November 2019, he enrolled as a CDS consumer and client of Bella to receive personal care services from a purported personal care attendant of his choosing.

l. The defendant admits that, throughout the relevant timeframe, in an effort to qualify and continue qualifying for Medicaid-funded CDS personal care services, he and Davis made misrepresentations to their MDHSS assessors regarding their health, capabilities, and need for assistance. The defendant admits, for instance, that he falsely represented that he required guided maneuvering of his limbs when getting in and out of bed and using the restroom, that he required help getting set up to drive a car, and that he was frequently incontinent, requiring the use of pads or briefs.

m. The defendant admits that D.S. coached Davis, who in turn coached the defendant, on what to tell MDHSS assessors in order to obtain approval for receiving personal care services. As a result of the defendant's and Davis's misrepresentations, MDHSS assessors approved and continued to approve Moorehead for Medicaid-funded CDS personal care services.

n. The defendant admits that, as he, Davis, and D.S. knew, neither the defendant nor Davis had the health issues or physical limitations that they claimed to have in order to convince MDHSS assessors to approve Medicaid-funded personal care services for them.

o. The defendant admits that, as he, Davis, and D.S. knew, neither the defendant nor Davis received personal care services from the various purported personal care attendants that they claimed to be their caretakers throughout the conspiracy.

p. The defendant admits that, as further described below, he, Davis, and Co- D.S. caused fraudulent claims for payment to be submitted to Medicaid for personal care services purportedly provided to the defendant and Davis, that, as all three defendants knew, were not taking place and, in any event, were not needed by Davis or the defendant.

q. The defendant admits that he and Davis created fraudulent electronic records to convince Medicaid that they were receiving personal care services when, in fact, they were not. Specifically, throughout the conspiracy, the defendant and Davis telephoned into Bella's electronic visit verification (EVV) system, the telephonic system intended to track and verify the provision of personal care services by requiring each personal care attendant to "clock in" and "clock out" using the CDS consumer's telephone to call the EVV system at the beginning and end of each provision of personal care services. By utilizing the EVV system to "clock in" and "clock out," the defendant and Davis created electronic records that falsely represented that personal care attendants were arriving at their residence and providing personal care services.

r. The defendant admits that, using the falsified EVV records, D.S., through Bella, caused claims for payment to be submitted to Medicaid for personal care services purportedly provided to the defendant and Davis.

s. The defendant admits that he frequently forgot to clock in and out of the EVV system, and in these instances D.S. often called the defendant to remind him to clock in and clock out. The defendant further admits that D.S. advised the defendant that, when the defendant forgot to clock in, D.S. could log in to the EVV system and "fix" the missed entries.

t. The defendant admits that, beginning at least as early as September 2020, D.S. compensated the defendant and Davis for their participation in the conspiracy by sending mobile banking app payments to Davis, who, in turn, sent a portion of those payments to the defendant.

The defendant admits that D.S. typically paid the defendant (through Davis) $225 per week in exchange for the defendant clocking in and out of the EVV system. The defendant further admits that D.S. offered the defendant $250 for any additional purported consumer of CDS personal care services that the defendant recruited to join Bella.

u. The defendant admits that, as additional compensation for clocking in and out of the EVV system, D.S. provided the defendant with MDMA (also known as ecstasy), marijuana, and Percocet (also known as oxycodone). The defendant further admits that he typically sold the drugs that D.S. provided to him.

v. The defendant admits that the false and fraudulent claims that he participated in causing to be submitted to Missouri Medicaid include the following examples:

| Beginning Date of Service | Ending Date of Service | Purported CDS Consumer | Procedure Code | 15-Minute Units Billed | Amount Billed | Amount Paid |
|---|---|---|---|---|---|---|
| 1/8/2021 | 1/21/2021 | Johnika Davis | T1019 (personal care services) | 215 | $857.85 | $857.85 |
| 2/1/2022 | 2/24/2022 | Johnika Davis | T1019 (personal care services) | 435 | $1,735.65 | $1,735.65 |
| 3/10/2023 | 3/23/2023 | Johnika Davis | T1019 (personal care services) | 272 | $1,330.08 | $1,330.08 |
| 3/10/2023 | 3/23/2023 | Jimmie Moorehead | T1019 (personal care services) | 255 | $1,246.95 | $1,246.95 |
| 4/1/2023 | 4/5/2023 | Johnika Davis | T1019 (personal care services) | 89 | $435.21 | $435.21 |
| 4/1/2023 | 4/6/2023 | Jimmie Moorehead | T1019 (personal care services) | 128 | $625.92 | $625.92 |
| 4/8/2023 | 4/19/2023 | Jimmie Moorehead | T1019 (personal care services) | 229 | $1,119.81 | $1,119.81 |
| 7/15/2024 | 7/18/2024 | Johnika Davis | T1019 (personal care services) | 68 | $355.64 | $355.64 |

w. The defendant admits that, as a result of the conspiracy to make false statements related to health care matters described in Count 1, the defendant was responsible for causing a

total loss of $217,363.17 to the Missouri Medicaid program, as more specifically set forth below:

| Category | Payor | Type of Claim | Amount Paid |
|---|---|---|---|
| 1 | Missouri Medicaid | Personal care services purportedly rendered to Davis | $116,012.32 |
| 2 | Missouri Medicaid | Personal care services purportedly rendered to the defendant | $101,350.85 |

**5. <u>STATUTORY PENALTIES</u>:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

**6. <u>U.S. SENTENCING GUIDELINES (2025 MANUAL)</u>:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following U.S. Sentencing Guidelines Total Offense Level provisions apply.

**a. <u>Chapter 2 Offense Conduct</u>:**

**(1) <u>Base Offense Level</u>:** The parties agree that the base offense level is 6, as found in Section 2X1.1 and 2B1.1.

**(2) <u>Specific Offense Characteristics</u>:** The parties agree that the following Specific Offense Characteristics apply: The parties agree that 10 levels should be added pursuant to Section 2B1.1(b)(1)(F), as the loss to the Medicaid program was more than $150,000 and less than $250,000.

**b. <u>Chapter 3 and 4 Adjustments</u>:**

**(1) <u>Acceptance of Responsibility:</u>** The parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if the defendant is otherwise eligible, then the Government moves to deduct one additional level pursuant to U.S.S.G. § 3E1.1(b), because the defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) <u>Adjustment for Certain Zero-Point Offenders</u>:** If the Court determines that the defendant does not receive any criminal history points from Chapter 4, Part A, then the parties agree that two levels should be deducted under Section 4C1.1(a), because the defendant meets all of the criteria under Section 4C1.1(a)(2) through (a)(10).

**(3) <u>Other Adjustments</u>:** The parties agree that the following additional adjustments apply: None.

**c. <u>Estimated Total Offense Level</u>:** The parties estimate that the Total Offense Level is 13, unless a two-level reduction under Section 4C1.1(a) applies based on the Court's determination of the defendant's criminal history.

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's

criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the

defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. <u>Mandatory Special Assessment</u>:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. <u>Possibility of Detention</u>:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. <u>Fines, Restitution and Costs of Incarceration and Supervision</u>:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. <u>Forfeiture</u>:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such

items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant specifically agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $217,363.17. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

**9. <u>ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS</u>:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to

suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

**10. <u>VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT</u>:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. <u>CONSEQUENCES OF POST-PLEA MISCONDUCT</u>:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. <u>NO RIGHT TO WITHDRAW GUILTY PLEA</u>:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

5/11/26
Date

AMY E. SESTRIC, #66219MO
Assistant United States Attorney

5/11/26
Date

JIMMIE MOOREHEAD
Defendant

5/11/26
Date

56546
DRAMON FOSTER, #56546MO
Attorney for Defendant